the whereabouts of the bonds in 1953; suit was not instituted until 1958, which was beyond the six-year period.

A word is necessary in relation to the right of the defendant Grobow to assert the defense of limitations. His independent conversionary act took place within the six-year period. The subject of whether a subsequent wrongful transfer will alter the running of the period as from the original conversion is exhaustively considered in *O'Connell v. Chicago Park District*, 376 *Ill.* 550, 34 *N. E.* 2d 836, 135 *A. L. R.* 698 (*Sup. Ct.* 1941). The court applied the theory suggested by Professor Ames that the doctrine of tacking adverse possession, firmly established with relation to land (see, *e. g.*, *O'Brien v. Bilow*, 121 *N. J. L.* 576, 579 (*E. & A.* 1938)), should be applied to the case of successive conversions of chattels. See also *Loughran v. Town of Pelham*, 126 *F.* 2d 714 (2 *Cir.* 1942); 41 *Am. Jur., Pledge and Collateral Security*, § 61, *p.* 626; 4 *Restatement, Torts*, § 899, *p.* 526; 2 *C. J. S. Adverse Possession* § 237, *p.* 884. In this view, which we deem sound in principle, plaintiff's action against the defendant Grobow is also barred.

Accordingly, the entry of summary judgment in favor of the defendants credit company and Grobow must be affirmed, as well as that in favor of the bank.

D., PLAINTIFF-RESPONDENT, v. D., DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued June 1, 1959—Decided July 3, 1959.

358

Before Judges GAULKIN, SULLIVAN and FOLEY.

*Mr. Nicholas Martini* argued the cause for plaintiff-respondent (*Mr. Nicholas G. Mandak,* on the brief).

*Mr. Albert L. Cohn* argued the cause for defendant-appellant (*David & Albert L. Cohn,* attorneys; *Mr. Richard Kurland,* on the brief).

PER CURIAM. This appeal is taken by defendant from a support order made by the Juvenile and Domestic Relations Court of Passaic County. The "approved statement of evidence" contained in the appendix follows:

"On November 5, 1958 the plaintiff filed a civil action in the usual form requesting support and maintenance for herself and three children, all bearing the defendant's name; [A], age 16, [B], age 14 and [C], age 12. On December 4, 1958 the hearing was adjourned at the request of defendant's counsel until December 18, 1958. On this day a hearing was held and the facts are found to be as follows: that the parties were legally married; that the oldest and youngest children, ages 16 and 12 respectively were children of the marriage, that as to the other child, 14 years of age, the mother testified on cross-examination that the defendant was not the father, that the middle child (14 yr. old) was supported by the defendant and was always a part of the family when the defendant was with the plaintiff, that after the defendant was aware of the situation respecting the parentage of the middle child, the parties cohabited and subsequently the youngest child was born; that the parties lived together intermittently until April, 1958 when the husband left; that the husband did not appear on December 18, 1958 and there was no legal evidence adduced to show that the defendant ever changed his position with respect to the middle child; that the defendant's mother appeared for him and his counsel asked the court to proceed without the defendant; that there was a dispute at this hearing as to whether the defendant was able to appear; his mother expressed the opinion that he could not and his wife expressed the opinion that he could; that the wife wanted the

husband to return and resume their marital relations; that the husband received $190.00 a month from the Veterans' Administration, his only income, and the wife $143.00 from the same source (her only income) for herself and the three children; that the husband cannot work; that the wife does not work; that the following are the needs for the wife and three children:

| | | |
|---|---|---|
| Rent | $35.00 | a month |
| Gas, heat and electric | 38.00 | a month |
| Repayment of loans incurred for family expenses | 21.00 | a month |
| Food—$34 a week for 4 x 4 1/3 | 147.00 | a month |
| Insurance and medical | 25.00 | a month |
| | $266.00 | a month |

that the husband's needs, living with his mother, were $90.00 a month; that a fair allowance under all the circumstances was to require the defendant to contribute from his income $100.00 for the support and maintenance of the wife and three children, giving her and them a total of $243.00 per month.

Defendant was in the Army and was injured in 1944; he was in the Army Hospital until 1948. He spent ten months in Greystone in 1951 and then to Veterans' Hospital at Lyons until 1954. Since leaving Lyons he has lived with his wife and his mother until April 1958 when he left his wife."

The court found the foregoing to be the facts and concluded that the defendant stands *in loco parentis* to the middle child and is required to support him. The defendant was ordered to pay as support for the family unit the sum of $100 monthly from his pension of $190 per month. Subsequent to the oral argument and at our request the trial judge furnished us with information relating to his reasons for fixing the sum of $100 as a proper support payment. From this it appears that defendant's mother offered the only evidence of his financial needs. She testified that he paid her $40 monthly for room and board, that he was obliged to purchase his own medicines but that hospital care when needed was provided by the Veterans' Administration. The court stated also that "approximately" $13 per week had been allowed for each child.

Defendant's first point is that in "reapportioning" the pension, the state court invaded an area over which the

federal Veterans' Administration had control since it is the agency which has been granted by Congress the exclusive right to apportion the pension funds in accordance with the needs of the pensioner and his family. The fallacy of this argument is found in the premise that the support order effected a "reapportionment" of the federal funds. The court treated the pension which the defendant receives as funds which are available to assist him in meeting his legal obligation to provide support for his family. Once such funds are in his hands they are his and the source of them is inconsequential. The related point that precedent to this action the plaintiff was required to exhaust her administrative remedies in the Veterans' Administration is likewise without merit. *N. J. S.* 2A:4–18 grants jurisdiction to the Juvenile and Domestic Relations court to hear and determine in a summary manner disputes of the kind here involved. It is an act which should be liberally construed to accomplish its purpose. *State v. Monroe,* 30 *N. J.* 160 (1959).

However, we find defendant's objection to the determination that he is bound to support a child which admittedly is not his to be well taken. Granted that the defendant has long stood *in loco parentis* to the middle child, the continuance of the relationship is a matter which lies within his will. In *Brinkerhoff and wife v. Merselis' Executors,* 24 *N. J. L.* 680 (*Sup. Ct.* 1855) it was said:

"The proper definition of a person *in loco parentis* to a child is a person who *means* to put himself in the situation of the lawful father of the child with reference to the father's office and duty of making provision for the child." (Emphasis ours)

The plaintiff cites *Schneider v. Schneider,* 25 *N. J. Misc.* 180 (*Ch.* 1947), in resistance of defendant's argument on this branch of the case. But the *Schneider* case supports the defendant's position. There the court held:

"Assuming that the relationship once existed in this case, it has not continued to exist and it may not again exist without the husband *meaning* that it shall exist. *Loco parentis* has to do with

custody, liability to support, and the like, and is temporary in character, and is not to be likened to that of adoption. The one is temporary in character, the other permanent and abiding." (Emphasis ours)

We conclude, therefore, that the trial court was without authority to order support of the middle child without the consent of the defendant or of evidence that he means to stand *in loco parentis*. Our consideration of this and of the defendant's physical condition and his daily living needs, leads to the conclusion that the support ordered should be reduced from $100 monthly to $50. The case is remanded to the Juvenile and Domestic Relations Court for proceedings not inconsistent with this opinion.